BRENNER *v.* FEINBURG.

SALES—TIME OF DELIVERY—REASONABLE TIME.

Where plaintiff purchased three car loads of newspapers on July 30th without specifying date of delivery, and the first car was shipped on September 28th, which was accepted by defendant and paid for on October 18th, when he inquired how soon the other two cars would be shipped, their shipment on October 26th and 29th respectively, *held*, to be within a reasonable time, in view of the correspondence between the parties.

Error to Berrien; White (Charles E.), J. Submitted January 6, 1922. (Docket No. 42.) Decided March 30, 1922.

Assumpsit by Herman Brenner against Abe Feinburg for breach of a contract for the sale of certain paper. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Burns & Hadsell,* for appellant.

*O'Hara & O'Hara,* for appellee.

MOORE, J. The plaintiff brought this action claiming that he was entitled to a judgment for the difference between the market price of two car loads of newspaper, on or about September 1, 1920, $46.71 per ton, and the contract price of the same, $34 per ton. At the conclusion of all the testimony each party made a motion for a directed verdict. The court directed a verdict for defendant in the sum of $231.82, this being the difference between the contract price and the price defendant received for the paper after defendant claims plaintiff refused to receive it. From a

judgment upon this verdict the case is brought here by writ of error.

There is very little dispute in the facts.    The transaction rests almost wholly in correspondence. After some preliminary correspondence the plaintiff wrote defendant July 30, 1920:

"I hereby confirm purchase of three cars clean newspaper in bales and solid bdls. at $34.00 less 3% Kalamazoo frt. rate ship same to my order St. Joseph, Mich., and oblige."

On July 31st, defendant wrote plaintiff in substance that the sale was made for delivery at Kalamazoo; that he had trouble with the mills at St. Joseph and did not desire to ship to them.

"If you can use the material in Kalamazoo, please let me hear from you with shipping directions.    Otherwise it will be necessary to cancel the order."

Two days later plaintiff wrote defendant assuring him there would be no trouble in shipping to St. Joseph.

"You can try them with one car first and hold up shipment of balance two cars until you hear from the first if you want to.    I will guarantee myself that you won't have any trouble."

On August 3, 1920, defendant again wrote plaintiff he could not ship to St. Joseph.    August 4, 1920, after a talk over the long distance telephone it was agreed the paper would be shipped to St. Joseph.    September 3d, plaintiff inquired in writing of defendant:

"How soon can I expect a car of newspaper from you the mill is getting anxious about it and oblige."

On the 16th day of September, 1920, the plaintiff wrote the defendant:

"In reference to three cars of newspaper due me as per our contract must have shipment on same in next few days—or will be obliged to go out on open market

for same and charge difference to your account—as mill is very strong after me.    Trusting I will not be forced to do this, I remain."

On the 18th day of September, 1920, the defendant wrote in answer to the above letter:

"Wish to say that shipment of one car will be made next week, and the balance will follow immediately."

On the 28th day of September, 1920, the defendant shipped to the plaintiff one car load billed to St. Joseph, Michigan, and that said car load arrived in St. Joseph on October 1, 1920, where it was accepted.

On the 18th day of October, 1920, the plaintiff wrote the defendant:

"Enclosed please find check for $337.32 in payment in full for car newspaper shipped to my order St. Joseph, Mich.    Hoping you will find same satisfactory. *    *    *    How soon can I expect the two cars of newspaper due me on order yet hope you will ship same at once the mill is liable to cancel the order on me and oblige."

The next day the defendant wrote the plaintiff: "The newspaper due you will go forward shortly." On October 26th the defendant telegraphed plaintiff:

"Shipping car ten three seven three N. K. P. loaded with newspaper.    Invoice will follow when railroad rates are obtained."

No answer was made to this telegram.    The car of newspaper referred to in the telegram arrived in St. Joseph, consigned to the order of the plaintiff, on October 29, 1920.    Defendant's proof shows that he had to pay $40 a ton for the newspapers shipped to plaintiff in this car and plaintiff's proof did not contradict this.

On October 29, 1920, the plaintiff wrote defendant:

"I just received wire from the mill in reference to the last car of newspaper shipped to me that they refused to take in the car only on the market price upon

arrival.   If same is satisfactory to you kindly advise me at once.   Also on next car on same basis."

On October 29, 1920, defendant shipped the third car, which arrived in St. Joseph on November 1, 1920, consigned to the order of the plaintiff.

On the 1st day of November, 1920, the plaintiff wired the defendant:

"Mill refused to take newspapers unless price reduced market worth day arrival.   Wire disposition."

The plaintiff refused to accept the last two cars for the reason that the market broke to $25 per ton while the cars were in transit, but he claims he had the right to refuse them because of the delay.   The defendant sold the two car loads which were refused by the plaintiff at the market price of newspaper on November 1, 1920, for $25 a ton.   The market price of newspaper at St. Joseph, Michigan, from August 1, 1920, until October 29, 1920, was $46.71 per ton, including freight charges on same.

It was claimed by plaintiff in his testimony that there is a general custom between sellers and buyers in transactions identical with the one in controversy, which fixes the time limit for delivery of goods bought, when no definite time for delivery is set, at 30 days from the date of the making of the contract of sale, or of the giving of the order for the purchase of the same, but defendant and a paper manufacturer who was a witness for plaintiff, testified that they knew of no such custom, but the latter could not swear that no such custom existed.   No time for delivery of any of this newspaper was specified in the contract except as indicated by the correspondence.

The position of defendant in this case is stated by counsel as follows:

"(1) There was no time specified for delivery in this contract and defendant was required only to make delivery within a reasonable time, and the correspond-

ence between the parties and acts and conduct of plaintiff conclusively established that delivery was made within a reasonable time and that any delay was waived by plaintiff.

"(2) There was a delivery to plaintiff by defendant prior to any attempt on the part of plaintiff to rescind the contract.

"(3) The refusal of plaintiff to accept the last two cars of paper constituted a breach of the contract by plaintiff, resulting in a loss to defendant, for which he was entitled to recover in this action."

Plaintiff insists that he was, under the undisputed facts, entitled to a judgment for the difference between the market price of two car loads of newspaper, on or about September 1, 1920, or $46.71 per ton, and the contract price of the same, or $34 per ton; that even admitting the liability of the plaintiff for the non-acceptance of the last two car loads of newspaper, the trial court erred in allowing defendant damages on the actual weight of the said two car loads; that even admitting the liability of the plaintiff for the non-acceptance of the last two car loads, there should have been a verdict directed for the plaintiff for the difference between the damages he sustained and the damage sustained by the defendant. Each of these contentions is argued at length.

After reviewing the evidence at considerable length, the trial judge expressed the opinion that

"Under these circumstances the court is bound to hold that the paper was shipped to the plaintiff within a reasonable time—in other words, that the correspondence between the parties and the conduct of the parties with reference to this transaction .was such that the paper was shipped within a reasonable time, and it was the duty of this plaintiff to accept those two car loads of paper when they arrived in St. Joseph."

The correspondence we have quoted shows that on October 18th the plaintiff sent defendant a check for

the first car load and inquired how soon he could expect the other two cars, and was promptly advised of the time and one car went forward only 8 days later, and 11 days later the last car was sent. We think the trial judge was justified in holding they went forward in reasonable time. This conclusion makes it unnecessary to discuss the assignments of error in detail.

The judgment is affirmed, with costs to the defendant.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.